## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| John Puetz,<br><br>Plaintiff,<br><br>v.<br><br>United States of America,<br><br>Defendant. | Case No. 22-cv-02870 (SRN/DTS)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Brian Lewis & Francis H. White, III, Francis White Law, PLLC, 8362 Tamarack Village, Suite 119-220, Woodbury, MN 55125, for Plaintiff.

Friedrich A. P. Siekert & Trevor Brown, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, MN 55415, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Government's Motion to Dismiss [Doc. No. 6]. For the reasons set forth below, the Court will grant the Government's Motion.

## I.   BACKGROUND

### A.   Mr. Puetz's Operation and Injuries

Plaintiff John Puetz, a sixty-two-year-old Army veteran and Minnesota resident, sought medical care from the Department of Veterans Affairs ("VA"). (Compl. [Doc. No. 1] ¶¶ 1–3.) Referred by his primary care physician to the VA Medical Center ("VAMC") in Minneapolis, Mr. Puetz there saw Vernon Franklin Sechriest II, MD, an orthopedic surgeon. (*Id.* ¶¶ 21–23.) Mr. Puetz reported "pain and . . . a feeling of instability" in his right knee following a previous partial knee replacement. (*Id.* ¶ 24.) Dr. Sechriest proposed

performing a total knee arthroplasty, or total knee replacement, to which Mr. Puetz consented. (*Id.* ¶ 25–26.)

On the day of the surgery, January 2, 2020, Mr. Puetz's girlfriend Julia Penderson drove him to the Minneapolis VAMC. (*Id.* ¶ 29.) He was placed under general anesthesia for the procedure. (*Id.* ¶ 30.) Dr. Sechriest performed the knee surgery with the assistance of two medical residents and six nurses employed by the VAMC.[1] (*Id.* ¶¶ 29–32.)

Mr. Puetz alleges that during the procedure the surgical team "used too much force in seating the knee replacement and caused a spiral fracture of the tibia." (*Id.* ¶ 33.) In addition, Mr. Puetz alleges that the surgical team caused him plantar fasciitis. (*Id.* ¶ 34.) Mr. Puetz's physical therapist allegedly "discovered that the foot piece used to immobilize [his] leg during surgery had been installed upside down thereby aggravating the tendon damage caused by [the surgical team]." (*Id.*) In addition, during Mr. Puetz's recovery at the VAMC, Dr. Sechriest allegedly told Mr. Puetz that the use of "long-stemmed knee components" caused his injuries. (*Id.* ¶ 38.)

Pursuant to Minnesota Statute § 145.682, Mr. Puetz retained an independent orthopedic surgeon, Jeffrey N. Hanson, MD, to review his medical records. (*Id.* ¶ 39.) Dr. Hanson opined that Mr. Puetz's treatment at the VAMC fell below the standard of care.

---

[1] Mr. Puetz alleges, upon information and belief, that the two residents and six nurses present during the surgery were Tyler Williamson, Matthew Godlewski, Joana Curry, Diana Pairazaman, Ruth Tracey, Pamela Theisen, Laurie Jackson, and John Klabunde. (Compl. ¶¶ 31–32.) None of these individuals are named as defendants.

(*Id.* ¶ 40.) Further, he attributed Mr. Puetz's tibia fracture to the use of long-stemmed components and the plantar fasciitis to the placement of the "foot holder." (*Id.*)

### B. Dr. Sechriest's Contract

At the time of the procedure, Dr. Sechriest was Chief of Orthopedics at the Minneapolis VAMC[2] pursuant to a Contract that established standards and expectations for his work. (*Id.* ¶ 23; Vagts Decl. [Doc. No. 8], Ex. A (Contract).) For example, the Contract referenced regulations, directives, handbooks, and policies with which Dr. Sechriest must comply. (Contract § B.3 ¶ 1.3.) It mandated training on life support techniques, record-keeping, and cyber security, as well as testing for certain diseases, (*id.* § B.3 ¶¶ 2.1.6–2.1.7), and it subjected Dr. Sechriest's qualifications to review by the VAMC's Chief of Staff, (*id.* § B.3 ¶ 2.2). The Contract prohibited him from referring VA patients to his own medical practice. (*Id.* § B.3 ¶ 2.5.) In addition to stipulating the daily hours, weekly schedule, on-call obligations, and location of Dr. Sechriest's work, (*id.* § B.3 ¶¶ 3.1–3.2), the Contract established the scope of his clinical and surgical care, including the number of patients to be seen on a typical day, (*id.* § B.3 ¶ 4.5.2). It provided that he would participate in conferences and teaching programs "as deemed appropriate by the Minneapolis [VA Health Care System] Chief of Staff," (*id.* § B.3 ¶ 4.5.3), and that his "performance will be monitored by the [G]overnment," (*id.* § B.3 ¶ 4.6.1). And one clause stated that the Government's contracting officer would be the "final authority on validating

---

[2] Dr. Sechriest has since left his position at the Minneapolis VAMC. (Compl. ¶ 23.)

complaints" about Dr. Sechriest's "relations with the Government employees or patients." (*Id.* § B.3 ¶ 4.6.2.)

Meanwhile, several provisions in the Contract disclaimed the existence of an employer-employee relationship between the VA and Dr. Sechriest. For instance: "Contractor . . . shall not be considered [a] VA employee[] for any purpose," (*id.* § B.3 ¶ 2.3); "Under no circumstances will contract physicians be considered a [VA] employee," (*id.* § B.3 ¶ 2.8.1); and, "The Government may evaluate the quality of professional and administrative services provided but retains no control over professional aspects of the services rendered, including . . . medical judgment, diagnosis, or specific medical treatments. The Contractor . . . shall be liable for their liability-producing acts or omissions," (*id.* § C.12 ¶ (a)). The Contract precluded Dr. Sechriest from determining VA policy, directing or controlling government employees "outside a clinical context," conducting performance reviews of VA staff, or selecting individuals for government employment. (*Id.* § B.3 ¶ 2.6.) It permitted Dr. Sechriest to hire his own employees to assist in fulfilling the Contract, but stipulated that he "be responsible to ensure the contractor personnel . . . are fully trained and fully competent." (*Id.* § B.3 ¶¶ 2.7, 2.9.) Finally, it stated, "The Federal Tort Claims Act does not cover Contractor." (*Id.* § B.3 ¶ 2.8.)

## C.   Administrative Claim and This Lawsuit

On January 3, 2022, Michael Eisenberg emailed the VA, writing in relevant part, "Ms. Lohnes (identified by the VA has [sic] Mr. Puetz's representative) and myself file the following [Federal Tort Claims Act] claim. Enclosed/following, please find Mr. Puetz's SF-95, Expert Letter in Support, and two Supporting Letters from Ms. Penderson." (Miller

Decl. [Doc. No. 9], Ex. A (Administrative Claim) at 1.) Mr. Eisenberg's signature block included "Law Office of Michael D.J. Eisenberg, Attorney and Counselor at Law" along with an email and website using the domain "Eisenberg-Lawoffice.com." (*Id.*) Ms. Lohnes was copied on the email. (*Id.*)

The attached Standard Form 95 ("SF-95") identified the knee replacement as the basis for Mr. Puetz's claim, alleging that Mr. Puetz "has sufferend [sic] unforeseen emotional and physical pain in his foot, leg & tibia since the operation." (*Id.* at 2.) The SF-95 requested $100,000,000.00 in compensation and was signed by "Jennifer Lohnes/ME" on January 3. (*Id.*)

The SF-95 instructs on its back page:

> A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 . . . ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR . . . PERSONAL INJURY . . . . THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

(*Id.* at 3 (emphasis in original).) The instructions continue:

> The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

(*Id.*) Beyond the body of his email, Mr. Eisenberg's submission to the VA did not include additional documents or language purporting to authorize Ms. Lohnes or himself to sign a claim on behalf of Mr. Puetz. (*See generally* Administrative Claim; *see also* Miller Decl. ¶¶ 6–8.)

The VA acknowledged receipt of Mr. Puetz's administrative claim on January 7, noting that "[t]he [Federal Tort Claims Act] does not govern the acts of independent contractors." (Miller Decl., Ex. B (Jan. 7, 2022 Letter).) In its next communication, the VA advised Mr. Puetz that it deemed Dr. Sechriest a contractor, not an employee. (Miller Decl., Ex. C (Feb. 28, 2022 Letter).) It finally denied Mr. Puetz's claim on May 10, 2022, concluding that "there was no negligent or wrongful act on the part of a VA employee acting within the scope of employment that caused compensable harm." (Miller Decl., Ex. D (May 10, 2022 Letter).)

Following the denial of his administrative claim, on November 9, 2022, Mr. Puetz filed suit against the United States in this Court under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680, alleging medical negligence by the Minneapolis VAMC's employees, agents, or servants. (Compl. ¶¶ 45–48.) The United States now moves to dismiss on two grounds: under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, and alternatively under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Def.'s Mot. to Dismiss [Doc. No. 6].)

The Government argues that this Court lacks subject-matter jurisdiction both because Mr. Puetz did not timely or properly file his administrative claim with the VA and because Dr. Sechriest is a VA contractor, not an employee, such that the Government is

shielded by sovereign immunity. (Def.'s Mem. [Doc. No. 7] at 1.) It asserts in the alternative that, should the Court find that subject-matter jurisdiction is proper, Mr. Puetz nevertheless failed to state a claim by failing to allege that VA-employed medical residents and nurses owed him a duty of care. (*Id.* at 2.) In support of its Motion, the Government submitted: the declaration of Daniel Vagts, employed as a Contract Officer with the VA; the declaration of John Miller, employed as a paralegal in the VA's Office of General Counsel; the form SF-95 submitted with the administrative claim; the VA's subsequent communications with Mr. Puetz; and Dr. Sechriest's Contract. (*See* Vagts Decl.; Miller Decl.)

In response, as to subject-matter jurisdiction, Mr. Puetz contends that his administrative claim was properly signed by his representative, that it was timely filed, and that Dr. Sechriest was a de facto VA employee. (Pl.'s Opp'n [Doc. No. 13] at 5–8.) With respect to the Government's Rule 12(b)(6) motion, Mr. Puetz stands on the pleaded allegations and argues that the government's cited legal authority is inapposite on a motion to dismiss. (*Id.* at 8–9.)

## II.   STANDARD OF REVIEW

### A.   Rule 12(b)(1)

The Government principally moves to dismiss for lack of subject-matter jurisdiction. In evaluating a motion under Rule 12(b)(1), the Court must first distinguish between a "facial attack" and a "factual attack" on its subject-matter jurisdiction. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). If the moving party attacks the facial sufficiency of the complaint, the plaintiff is afforded similar safeguards as in a Rule

12(b)(6) motion. *W. Neb. Res. Council v. Wyo. Fuel Co.*, 641 F. Supp. 128, 139 (D. Neb. 1986). Namely, the Court must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law," and determine whether the plaintiff's alleged facts "affirmatively and plausibly suggest" that jurisdiction exists. *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). The Court's review is limited to the face of the pleadings. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015).

Conversely, where the moving party attacks the factual basis for the Court's subject-matter jurisdiction, the Court may evaluate extrinsic evidence without affording the plaintiff the benefit of Rule 12(b)(6)'s safeguards. *Osborn*, 918 F.2d at 729 n.6; *see also Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial Court from evaluating for itself the merits of the jurisdictional claims." *Osborn*, 918 F.3d at 730 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)). The plaintiff bears the burden of proof. *Id.* In this case, the Government raises a factual challenge to the Court's subject-matter jurisdiction. (Def.'s Mem. at 2.)

**B.      Rule 12(b)(6)**

The Government alternatively moves to dismiss for failure to state a claim. (Def.'s Mem. at 2, 19–23.) When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true and views those allegations in the light most favorable to the plaintiff. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th

Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id.*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). Matters outside the pleadings include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings," as well as statements of counsel at oral argument that raise new facts not alleged in the pleadings. *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999). The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (citation and internal quotation marks omitted).

## III. DISCUSSION

The Government's primary ground for challenging this Court's subject-matter jurisdiction is that Mr. Puetz failed to properly present his claim to the VA. (Def.'s Mem. at 10–19.) It points to two deficiencies: the failure to include evidence of the SF-95

signatories' authority to bring a claim on behalf of Mr. Puetz; and the submission of the claim on January 3, a day after the two-year statute of limitations expired. (*Id.*) Without proper presentment, the Government thus contends, it enjoys sovereign immunity to suit. (*Id.* at 10–11.)

Mr. Puetz responds, first, that attorneys need not submit evidence of authority, and second, that he provided sufficient evidence of Ms. Lohnes and Mr. Eisenberg's authority to represent him. (Pl.'s Opp'n at 1–5.) As to Ms. Lohnes, he argues that the VA had previously recognized her as his representative for a benefits adjustment. (*Id.* at 5.) And he asserts that both she and Mr. Eisenberg, as attorneys subject to the Minnesota Rules of Professional Conduct, are ethically prohibited from falsely purporting to represent a client. (*Id.* at 2–3.) Regarding timeliness, Mr. Puetz notes that the two-year statute of limitations technically expired on a Sunday and that the previous Friday was the legal public holiday for New Year's Day. (*Id.* at 5–6.) He contends that "it would make very little sense" to require claimants to file claims on a day that the VA is closed and potentially on a federal holiday. (*Id.* at 6.)

Generally, "sovereign immunity shields the Federal Government and its agencies from suit." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994). However, "[t]he FTCA is a 'limited waiver of the United States' sovereign immunity' that allows 'persons injured by federal-employee tortfeasors to sue the United States for damages in federal district court.'" *Rollo-Carlson ex rel. Flackus-Carlson v. United States*, 18-cv-02842 (ECT/ECW), 2019 WL 1243017, at *1 (D. Minn. Mar. 18, 2019) (quoting *Mader v. United States*, 654 F.3d 794, 797 (8th Cir. 2011) (en banc)), *aff'd*, 971 F.3d 768 (8th Cir. 2020).

Prior to filing suit against the United States, under the FTCA, a claimant must "first present[] the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a). The FTCA also provides that a claim shall be "forever barred unless it is presented . . . within two years after such claim accrues[.]" 28 U.S.C. § 2401(b).

Although an FTCA plaintiff bears the burden of pleading and proving presentment, *McNeil v. United States*, 508 U.S. 106, 112 (1993), the FTCA itself does not define when a claim is properly "presented." *See* 28 U.S.C. § 2675; *Mader*, 654 F.3d at 798. However, 28 C.F.R. § 14.2(a) clarifies the presentment requirement:

> [A] claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2(a) (2023).

The Circuit Courts of Appeal disagree about whether each of these conditions must be satisfied and about the jurisdictional impact of failing to do so. *See, e.g.*, *A.M.L. ex rel. Losie v. United States*, 61 F.4th 561, 564–65 (8th Cir. 2023) (describing different approaches to the sum certain requirement and collecting cases). Nevertheless, in this Circuit, proper presentment is a "jurisdictional precondition to filing an FTCA suit in federal district court." *Mader*, 654 F.3d at 794; *see also id.* at 807 ("[A] claim that fails to satisfy § 2675(a)'s requirements remains inchoate, unperfected, and not judicially actionable."). Moreover, the Eighth Circuit has adopted each of the conditions articulated

11

in 28 C.F.R. § 14.2(a) as mandatory for proper presentment. *Mader*, 654 F.3d at 804 (declining to conduct a deference analysis for 28 C.F.R. § 14.2(a) because "§ 14.2(a)'s interpretation of § 2675(a) is the interpretation we would adopt even if there were no formal rule and we were interpreting the statute from scratch." (quotation omitted)).

In this case, the parties do not dispute that Mr. Puetz submitted an SF-95 which adequately specified the allegedly tortious incident and requested damages in a sum certain. (*See* Administrative Claim at 2.) The only condition in dispute is the inclusion of evidence of authority to present a claim on behalf of Mr. Puetz.

### A.   *Mader v. United States*

The Eighth Circuit squarely addressed the evidence of authority requirement in *Mader v. United States*. 654 F.3d 794. There, Mr. Mader's widow attempted to present a wrongful death claim to the VA. *Id.* at 798–99. Her attorney signed and submitted the SF-95, which listed her as the "Personal Representative of the Estate of Robert L. Mader." *Id.* at 799. She did not submit any evidence to the VA of her authority to act on behalf of Mr. Mader in that capacity. *Id.* After requesting such evidence from Ms. Mader's attorney several times, the VA ultimately denied the wrongful death claim based on the lack of authority evidence. *Id.*

Several months later, Ms. Mader filed a wrongful death action against the United States in federal court under the FTCA. *Id.* The district court dismissed her claim for lack of subject-matter jurisdiction because she had failed to present evidence of her authority to the VA. *Id.* Initially, a divided panel of the Eighth Circuit reversed the district court,

holding that a properly "presented" claim need not include evidence of authority to bring the claim. *Id.*

After granting en banc review, the Eighth Circuit examined the statutory framework of the FTCA and the history of its enactment. *Id.* at 800–01. The Court explained the presentment requirement's "practical purpose": "it provides federal agencies a fair opportunity to meaningfully consider, ascertain, adjust, determine, compromise, deny, or settle FTCA claims prior to suit." *Id.* Understood in this light, presenting evidence of a representative's authority to act on behalf of a claim's beneficiaries is "totally essential to meaningful agency consideration." *Id.* at 801. The court therefore held that "a properly presented claim under § 2675(a) *must include* evidence of a representative's authority to act on behalf of the claim's beneficiaries under state law." *Id.* at 803 (emphasis added).

Furthermore, the court concluded that "conformity with § 2675(a) is a jurisdictional term of the FTCA's limited waiver of sovereign immunity." *Id.* at 808. Because Ms. Mader failed to provide to the VA evidence of her authority as personal representative of Mr. Mader's estate, the district court had no authority to hear her case and had properly dismissed it. *Id.*

Mr. Puetz argues that because of its wrongful death context, *Mader* does not apply here, where no state law requires a special appointment procedure for an attorney to represent a client in a medical negligence suit. (Pl.'s Opp'n at 1–5; *id.* at 2 ("Despite the best efforts of the Department of Veterans Affairs, the Plaintiff is not dead.").) The Court disagrees.

In *Mader*, the court's in-depth discussion of the state statutory wrongful death requirements served to illustrate the importance of requiring evidence of authority generally. 654 F.3d at 801 ("The facts of this case demonstrate why . . . [excusing] her failure to present such evidence-of-authority[ ] fails to give full effect to § 2675(a)'s manifest purpose and fails to take into account the realities of the administrative consideration process contemplated in §§ 2675(a) and 2672."). Under Nebraska law, Ms. Mader's home state, only an appointed personal representative can bring a wrongful death action. *Id.* at 801 (citing Neb. Rev. Stat. § 30-810). It turned out that Ms. Mader's appointment had expired before she submitted the wrongful death claim to the VA, but she only revealed this fact at oral argument before the en banc court. *Id.* at 802.

The court reasoned that, had she been allowed to proceed with the administrative claim, any potential settlement reached with the VA would have been "ultra vires in nature . . . jeopardiz[ing] the time, treasure, and superintendence responsibilities of the VA." *Id.* It underscored again that evidence of authority to act on behalf of a claim's beneficiaries is necessary for federal agencies to "meaningfully settle, consider, or even fully ascertain a wrongful death claim." *Id.* at 803.

The court continued:

Similar representation problems may also extend beyond the wrongful death context. Indeed, FTCA claims involving questions of age, competency and numerosity, among others, will often require the appointment of an agent or trustee. And, as the government pointed out at oral argument, there are currently some 500,000 FTCA claims pending in the wake of the Hurricane Katrina disaster, a number of which have representation issues. In fact, according to the government, in some cases *up to four lawyers have attempted to present FTCA claims to federal agencies on behalf of the same claimants*.

14

*Id.* (emphasis added). The same settlement integrity concerns thus underlie all FTCA claims, not only those asserting a cause for wrongful death.

True, the Eighth Circuit has not had occasion to apply *Mader* in the context of an attorney-client relationship. Nonetheless, the *Mader* court did not limit its central holding to a particular legal theory or type of representative. In fact, it expressly contemplated that unscrupulous attorneys may attempt to erroneously present claims for beneficiaries who they do not represent. *Id.* Under any circumstance, "agencies simply cannot meaningfully consider FTCA claims with an eye towards settlement if representatives fail to first present evidence of their authority to act on behalf of [a] claims' beneficiaries." *Id.*

At least one other court in this Circuit has applied the evidence of authority requirement to an administrative claim submitted by an attorney. *See E.M. ex rel. Benitez v. United States*, No. 2:19-cv-04221 (MDH), 2020 WL 6947681, at *3 (W.D. Mo. Nov. 25, 2020) (refusing to find that plaintiff's law firm had sufficient authority to bring claim on behalf of plaintiff's minor child where the firm "submitted no evidence that it was duly appointed to represent E.M. in the claim"). And even in Circuits where providing contemporaneous evidence of authority is not a jurisdictional precondition to suit, courts have interpreted 28 C.F.R. § 14.2(a) to encompass attorneys. *See, e.g.*, *Shaffer v. United States*, No. 2:12-cv-1092, 2014 WL 585365, at *4 (S.D. Ohio Feb. 14, 2014) (finding that SF-95 form which did not state that the signatory was an attorney, or include any attachments demonstrating authority to represent, "fail[ed] to satisfy the capacity and authority requirements" of 28 C.F.R. § 14.2(a)); *Winn v. United States Postal Serv.*, No.

19-cv-00842 (BAJ/RLB), 2020 WL 7630685, at *5 (M.D. La. Dec. 22, 2020) (slip copy) (noting that proper presentment under 28 C.F.R. § 14.2(a) requires the federal agency to receive "the title of the legal capacity of the person signing, accompanied by evidence of that person's authority to present a claim.").

Rightly so. The plain language of 28 C.F.R. § 14.2(a) addresses a number of relationships to the claim's beneficiary—"agent, executor, administrator, parent, guardian"—before finishing with the broad "other representative." 28 C.F.R. § 14.2(a). The function of this catchall phrase is to emphasize that anyone other than the beneficiary attempting to submit a claim must produce evidence of their authority. *See, e.g.*, *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. --, 2023 WL 4002952 (June 15, 2023) (finding that "other foreign or domestic governments" had an "all-encompassing scope" as a "broad catchall phrase" placed at the end of a statutory definition listing types of governments).

Finally, Mr. Puetz attempts to distinguish *Mader* and its progeny by noting that in some of these cases, the plaintiff ignored the agency's repeated requests for evidence of authority. (Pl.'s Opp'n at 3–5.) By contrast, here, the VA did not request additional evidence of authority despite communicating with him about his claim. (*Id.* at 4.) Mr. Puetz thus urges the Court to find that the VA waived its ability to raise the lack of evidence of authority as a defect. (*Id.* at 5.)

Other courts in this Circuit have rejected identical arguments. *See, e.g.*, *Hayden v. United States*, No. 4:12-cv-2030 (DDN), 2013 WL 1148967, at *3 (E.D. Mo. Mar. 19, 2013) ("Plaintiff attempts to distinguish *Mader* by noting that the plaintiff in that case

16

refused to respond to requests for proof of authority. However, the reasoning of *Mader* addresses failures to present rather than failures to respond, and the holding expressly requires that plaintiffs 'present' such authority."); *Hennager v. United States*, No. 3:19-cv-258,  2020 WL 7295832, at *5 (D.N.D. Nov. 4, 2020) (slip copy) ("[I]t is not the agency's burden to solicit evidence of a representative's authority to bring a claim."), *report and recommendation adopted*, 2020 WL 7024481, at *2 (D.N.D. Nov. 30, 2020); *see also Rollo-Carlson ex rel. Flackus-Carlson*, 971 F.3d at 771 ("Preclusion [from raising lack of evidence of authority] does not apply where, as here, a party must administratively exhaust her claim before filing suit in court.").

Indeed, even prior to *Mader* the Eighth Circuit emphasized that evidence of authority must be "asserted *contemporaneously* with the filing of the claim by one who files on behalf of a claimant." *Lunsford v. United States*, 570 F.2d 221, 226 (8th Cir. 1977) (quoting *Caidin v. United States*, 564 F.2d 284, 286 (9th Cir. 1977)). The court has declined to create exceptions to this requirement. *See After v. United States*, 511 F. App'x 596, 597 (8th Cir. 2013). The VA's decision not to request evidence of authority did not relieve Mr. Puetz of the burden to present it.

With no basis to distinguish *Mader*, the Court therefore finds that it unambiguously applies to this case.

### B.    Evidence of Authority

With *Mader*'s relevance settled, the Court now turns to the evidence here. Mr. Puetz asserts that even under *Mader*, he submitted sufficient evidence of Ms. Lohnes' and Mr. Eisenberg's authority to act on his behalf. (*See generally* Pl.'s Opp'n at 2–5.)

17

Mr. Eisenberg submitted an SF-95 signed "Jennifer Lohnes/ME." (Administrative Claim at 2.) His email did not include any attachments describing Ms. Lohnes' or Mr. Eisenberg's relationship to Mr. Puetz or their authority to assert his claim. (*See generally* Administrative Claim.) On its face, then, Mr. Puetz's administrative claim did not comply with Section 2675(a)'s presentment requirement.

Mr. Puetz argues that the VA had previously recognized Ms. Lohnes as his representative, suggesting that he had no need to present additional evidence of her authority to bring a claim on his behalf. (Pl.'s Opp'n at 5.) The record does not support Mr. Puetz on this score.

Mr. Miller, paralegal for the VA, declared that contrary to Mr. Eisenberg's email, the VA had not designated Ms. Lohnes as Mr. Puetz's representative for the purposes of an administrative claim regarding personal injuries. (Miller Decl. ¶ 8.) He explained that while Ms. Lohnes had pursued an adjustment to Mr. Puetz's disability benefits on his behalf, a "special set of regulations and procedures" governs benefits adjustments and an attorney's accreditation to seek them. (*Id.* ¶ 9.) Further, he declared: "Neither accreditation generally nor the submission of a benefits claim on behalf of a claimant serves as proof of an attorney's authority to act on the claimant's behalf in other interactions with the VA— e.g., submitting administrative claims for personal injuries pursuant to the Federal Tort Claims Act." (*Id.*)

Mr. Puetz characterizes this declaration as a "bald assertion" that the two empowerments are different, unsupported by any case law. (Pl.'s Opp'n at 5.) But Mr. Miller's declaration is sworn under the penalty of perjury and Mr. Puetz has submitted no

18

evidence to rebut it. Indeed, Ms. Lohnes is notably absent in all of this: the record lacks an affidavit detailing her involvement with Mr. Puetz's disability benefits adjustment, let alone her role in pursuing his administrative claim. With only Mr. Miller's affidavit to rely upon, the Court concludes that Ms. Lohnes' signature on the SF-95 is not evidence of her authority to represent Mr. Puetz. *See Faibisch v. Univ. of Minn.*, 304 F.3d 979, 801 (8th Cir. 2002) (noting that the district court "resolves factual disputes" when evaluating a factual attack on subject matter jurisdiction).

Mr. Eisenberg fares no better. Although his email conspicuously includes his title and information about his firm, such that the VA would reasonably understand that he is an attorney, it omits an authorization from Mr. Puetz to act on his behalf. (*See* Administrative Claim at 1.)

As for Mr. Eisenberg's and Ms. Lohnes' duty of candor under the Rules of Professional Conduct, Mr. Puetz provides no caselaw to establish that it suffices as evidence of representative authority under state law. The Rules of Professional Conduct are just that—rules to govern an attorney's professional conduct. They are not law. *See, e.g.*, *In re Proposed Petition to Recall Hatch*, 628 N.W.2d 125, 128 (Minn. 2001) ("[T]he Rules of Professional Conduct are intended only as a basis for professional regulation . . . ."). The Hurricane Katrina attorneys mentioned in *Mader* were presumably subject to similar requirements, yet this did not assuage the concerns of the Eighth Circuit. *See Mader*, 654 F.3d at 803. As another district court has aptly observed, "The focus under *Mader* is not whether a plaintiff has actual authority to bring a claim, but whether the plaintiff has first presented to the appropriate federal agency evidence of his or her

authority to act on behalf of the claim's beneficiaries under state law." *Runs After v. United States,* No. 10-cv-3019 (RAL), 2012 WL 2951556, at *6 (D.S.D. July 19, 2012), *aff'd sub. nom. After v. United States*, 511 F. App'x 596 (8th Cir. 2013).

The Court again recognizes that the Eighth Circuit has not defined the evidence sufficient to demonstrate an attorney's authority to bring an administrative claim on behalf of a beneficiary. The cases that mention this issue suggest that attorneys commonly provide the agency with a simple letter of representation. *See, e.g.*, *Rollo-Carlson*, 2019 WL 1243017, at *3 (describing submission of letter of representation); *Winn*, 2020 WL 7630685, at *1 (same); *McMillon v. United States Dep't of Veteran Affairs*, No. 2:18-cv-02412 (RFB/NJK), 2019 WL 4738019, at *3 (D. Nev. Sept. 28, 2019) (same). In fact, Mr. Puetz's counsel has submitted such letters in the past. *See Rollo-Carlson,* 2019 WL 1243017, at *3 ("Attached to the form was a letter from [Mr. Puetz's counsel], along with a copy of his 'Letter of Representation,' verifying that he was 'retained to prosecute Mr. & Mrs. Douglas Carlson's claim for the wrongful death of their son.'").[3] Regardless, in this case, the Court need not split hairs about the sufficiency of the evidence of authority because Mr. Puetz submitted no evidence at all. Under *Mader*, this lack of evidence plainly renders Mr. Puetz's administrative claim deficient.

The evidence of authority requirement is "far from burdensome" and is "fundamental to the meaningful administrative consideration and settlement process." *Mader*, 654 F.3d at 803–4. The requirement is even less onerous for an attorney, whose

---

[3] The Court recognizes that Mr. Lewis had no part in submitting Mr. Puetz's administrative claim.

professional skillset is geared towards compliance with procedural hurdles. Moreover, it is standard practice for most attorneys to enter into a representation agreement with their clients. *See id.* at 804 (noting that evidence of authority is "uniquely in the representative's possession"). And the SF-95 itself provides a helpful reminder to would-be representatives on its back page that they must include evidence of authority. (*See* Administrative Claim at 3 ("If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.").)

The Court recognizes, as other district courts have before it, the unfortunate and harsh results of applying the evidence of authority requirement. *See, e.g.*, *E.M.*, 2020 WL 6947681, at *3; *Runs After*, 2012 WL 2951556, at *8. But the Eighth Circuit has time and again emphasized that the FTCA presentment conditions are construed narrowly and can only be satisfied with "strict compliance." *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993); *Mader*, 654 F.3d at 805. The Court cannot ignore binding Eighth Circuit precedent. Absent compliance with Section 2675(a), Mr. Puetz's claim was not properly presented to the VA and the Court has no subject-matter jurisdiction to adjudicate this action.

## C.    Remainder of Motion

Because Mr. Puetz's failure to attach evidence of Ms. Lohnes and Mr. Eisenberg's authority to file a claim on his behalf is dispositive of this Court's jurisdiction, the Court need not reach the Government's additional jurisdictional arguments regarding timeliness

and Dr. Sechriest's employment status. Moreover, the Court need not reach the issue of the sufficiency of Mr. Puetz's allegations against the medical residents and nurses.

Accordingly, the Court will grant the Government's Motion to Dismiss for lack of subject-matter jurisdiction based on Mr. Puetz's failure to properly present his administrative claim. The dismissal must be without prejudice. *Cnty. of Mille Lacs v. Benjamin*, 361 F.3d 460, 464–65 (8th Cir. 2004).

## IV.    CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Government's Motion to Dismiss [Doc. No. 6] is **GRANTED**; and

2. Mr. Puetz's claim alleging medical negligence under the Federal Tort Claims Act is dismissed **WITHOUT PREJUDICE**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: June 26, 2023                                    s/ Susan Richard Nelson
                                                        SUSAN RICHARD NELSON
                                                        United States District Judge